UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| ANTOLIN ANDREW MARKS, | ) | CASE NO. C06-1796-RSM |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| NEIL CLARK, et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## I. INTRODUCTION AND SUMMARY CONCLUSION

On December 18, 2006, petitioner Antolin Andrew Marks, proceeding pro se, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of his detention by the United States Immigration and Customs Enforcement ("ICE"). (Dkt. #6). Petitioner requests that he be released from custody, alleging that he is being indefinitely detained contrary to the mandate in *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 150 L. Ed. 2d 653 (2001). This is one of four habeas petitions petitioner has filed in this Court since he was transferred from the California State Prison – Solano in Vacaville, California, to the Northwest Detention Center ("NWDC") in Tacoma, Washington, in August 2005. *See Hopper v. Roach*,

REPORT AND RECOMMENDATION
PAGE -1

Case No. C05-1812-RSL; *Marks v. Clark,* Case No. C06-717-RSL; *Marks v. Clark*, Case No. C06-1679-JLR; *Marks v. Clark*, Case No. C06-1796-RSM.

Respondents have filed a Motion to Dismiss and Motion for Permanent Injunction, arguing that petitioner's mandatory detention is lawful pursuant to Section 236(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226(c), because he is not yet subject to a final order of removal. (Dkt. #10; *Marks v. Clark*, Case No. C06-717-RSL, Dkt. #21).[1] Respondents further contend that petitioner has not been denied due process because he was given an individual bond hearing before an Immigration Judge, who determined that petitioner should remain detained without bond pending his removal proceedings because he poses a substantial flight risk. (*Marks v. Clark*, Case No. C06-717-RSL, Dkt. #21 at 2).

Having carefully reviewed the entire record, I recommend that petitioner's habeas petition (Dkt. #6) be DENIED and that respondents' motion to dismiss (Dkt. #10) be GRANTED.

## II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner has used or has been known by over fifty aliases, including Vincent Daniel Hopper, Wayne Ricky Elison Rudder, and Antolin Andrew Marks. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L508-509-Pt. 1; L567-Pt. 1; L571-Pt. 1). Petitioner's fingerprints match the fingerprints of alien Wayne Ricky Elison Rudder, who is a native a citizen of Trinidad and who was admitted to the United States on or about March 7, 1974, as an immigrant. (*Hopper*

---

[1] Respondents note that petitioner's habeas petition is a near verbatim recitation of a prior habeas petition filed in Case No. C06-717-RSL. Because respondents fully addressed all of the issues petitioner has raised in the instant habeas petition in the prior case, respondents incorporate by reference their Amended Motion to Dismiss and Motion for Permanent Injunction filed in Case No. C06-717-RSL, Dkt. #21. (Dkt. #10 at 1).

*v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L383-84-Pt. 1; R1034-35-Pt. 1; R1021-Pt. 1).

On or about September 24, 1991, the former Immigration and Naturalization Service [2] ("INS") issued an Order to Show Cause ("OSC"), placing petitioner in deportation proceedings and charging petitioner with being deportable from the United States for having been twice convicted of Possession of a Controlled Substance. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L555-69-Pt. 1; R301-302-Pt. 1). Petitioner appeared for his deportation hearing before an Immigration Judge ("IJ") and admitted the allegations contained in the OSC and conceded deportability as charged. Instead of deportation, petitioner filed an application for waiver of inadmissability under INA § 212(c) and an application for asylum and withholding of deportation. On July 26, 1993, the IJ denied petitioner's applications, and ordered petitioner deported from the United States to Trinidad on the charges contained in the OSC. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R999-1021-Pt. 1). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which was denied on November 4, 1993. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1022-31-Pt. 1). On November 18, 1993, petitioner filed a direct appeal of the BIA's decision in the Ninth Circuit Court of Appeals, which was dismissed for lack of jurisdiction. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. # 37 at R753-54-Pt. 1). Petitioner also filed a Petition for Emergency Stay of Deportation in the United States Court of Appeals for the District of Columbia Circuit, which was dismissed on December 6, 1993, for improper venue. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37

---

[2] Effective March 1, 2003, the Immigration and Naturalization Service was abolished pursuant to the Homeland Security Act of 2002, 116 Stat. 2135, Pub. L. 107-296, *codified at* 6 U.S.C. § § 101, *et seq.*, and its immigration functions were transferred to the Department of Homeland Security ("DHS").

01 at R755-57-Pt. 1). On December 8, 1993, petitioner filed a Motion for Emergency Stay of

02 Deportation with the United States Supreme Court, which was denied the same day. (*Hopper v.*

03 *Roach*, Case No. C05-1812-RSL, Dkt. #37 at R842-872-Pt. 1; L278-Pt. 1). On December 9,

04 1993, petitioner was removed from the United States to Trinidad. (*Hopper v. Roach*, Case No.

05 C05-1812-RSL Dkt. #37 at L269-70-Pt. 1; L274-Pt. 1).

06 On January 14, 1994, only one month after he had been removed, petitioner illegally

07 reentered the United States without inspection. He remained in the United States illegally for

08 more than eleven years before he was discovered at the California State Prison – Solano, where

09 he was serving his sentence for a conviction for Grand Theft. On August 18, 2005, petitioner was

10 released from the California State Prison and transferred to ICE custody. Petitioner claimed that

11 he was Daniel Vincent Hopper, born in Los Angeles, California, and that he had been deported

12 to Trinidad in 1993 illegally. (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R996-98-

13 Pt. 1). A fingerprint comparison performed by the Department of Homeland Security Forensic

14 Laboratory showed that petitioner's fingerprints matched the fingerprints of an alien who went by

15 the alias Ricky Elison Rudder who had been deported to Trinidad on December 9, 1993. (*Hopper*

16 *v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at R1033-34-Pt. 1).

17 On August 18, 2005, petitioner was served with a Warrant for Arrest of Alien, a Notice

18 of Custody Determination, and a Notice to Appear, placing him in removal proceedings and

19 charging him with removability for entering the United States without being admitted or paroled,

20 and for reentering the United States after being ordered deported without being admitted or

21 paroled. ( *Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37 at L530-35-Pt. 1). On

22 September 26, 2005, petitioner appeared before an IJ, claiming that this was a case of mistaken

REPORT AND RECOMMENDATION
PAGE -4

01 identity and that he was wrongfully removed in 1993.  On October 12, 2005, petitioner filed an

02 application for asylum and withholding of removal.  (*Hopper v. Roach*, Case No. C05-1812-RSL,

03 Dkt. #37 at L583-576-Pt. 1).  His case was scheduled for trial on February 22, 2006, on the issues

04 of removability and asylum from Trinidad.  (*Hopper v. Roach*, Case No. C05-1812-RSL, Dkt. #37

05 at R1043-1045-Pt. 1; Dkt. #39 at 3 n.1).

06      On March 23, 2006, however, petitioner was transferred to the custody of the Tacoma

07 Police Department for extradition to California pursuant to a September 1, 2005, warrant for

08 petitioner's arrest for a parole violation.  (*Hopper v. Clark*, Case No. C05-1812-RSL, Dkt. #59).

09 On March 28, 2006, ICE filed a motion in the Immigration Court requesting that petitioner's

10 pending removal proceedings be administratively closed because petitioner was no longer in ICE

11 custody.  On March 29, 2006, the IJ issued an Order administratively closing petitioner's removal

12 proceedings.  (*Hopper v. Clark*, Case No. C05-1812-RSL, Dkt. #58, Ex. B).  On April 11, 2006,

13 petitioner returned to the NWDC after California officials decided not to extradite him, and his

14 removal proceedings were reopened.

15      After a removal hearing, the IJ denied petitioner's application for asylum, withholding of

16 removal, and withholding of removal under Article III of the Convention Against Torture, and

17 ordered him removed to Trinidad and Tobago on December 1, 2006.  (*Marks v. Clark*, Case No.

18 C06-717-RSL, Dkt. #22).  On February 1, 2007, the IJ denied petitioner's request for a change

19 in custody status.  *Id.*  Petitioner timely appealed the IJ's removal order and bond order to the

20 BIA.  On April 11, 2007, the BIA dismissed petitioner's appeal of the IJ's removal order.

21 Accordingly, petitioner's order of removal became administratively final on April 11, 2007.  On

22 April 20, 2007, the BIA dismissed petitioner's appeal of the IJ's bond order and vacated the IJ's

bond order as moot, noting that neither the IJ nor the BIA had authority to set bond conditions because a final order of removal had been entered. *Id.* On May 3, 2007, petitioner filed a Petition for Review and a motion for stay of removal in the Ninth Circuit Court of Appeals. *Rudder v. Gonzales*, No. 07-71756 (9th Cir. filed May 3, 2007). Under Ninth Circuit General Order 6.4(c)(1), this caused a temporary stay of removal to automatically issue. The Petition for Review remains pending before the Ninth Circuit.

### III. DISCUSSION

A. Petitioner's Removal Period Has Not Begun and He is Subject to Mandatory Detention Pursuant to INA § 236(c).

Section 236 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226, provides the framework for the arrest, detention, and release of aliens in removal proceedings. Once removal proceedings have been completed, the detention and release of aliens shifts to INA § 241, 8 U.S.C. § 1231. The determination of when an alien becomes subject to detention under Section 241 rather than Section 236 is governed by Section 241(a)(1). INA § 241(a)(1)(B) provides that:

The removal period begins on the latest of the following:

(i) The date the order of removal becomes administratively final.

(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.

(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B)(emphasis added). Thus, pursuant to Section 241(a)(1)(B)(ii), where a court issues a stay of removal pending its review of an administrative removal order, the alien continues to be detained under Section 236 until the court renders its decision. *See Ma v.*

REPORT AND RECOMMENDATION
PAGE -6

*Ashcroft,* 257 F.3d 1095, 1104 n.12 (9th Cir. 2001) (stating, "[i]f the removal order is stayed pending judicial review, the ninety day period begins running after the reviewing court's final order."); *see also Martinez-Jaramillo v. Thompson*, 120 Fed. App'x 714, 717 (9th Cir. 2005) (holding that where a stay of removal is granted pending judicial review, INA § 236 provides the statutory basis for detention). Here, as noted above, the Ninth Circuit has issued a stay of removal pending its review of petitioner's removal order, and the petition for review remains pending. "Because Petitioner's removal order has been stayed by the Ninth Circuit pending its review of the BIA decision, the 'removal period' has not yet commenced, and Petitioner therefore is detained pursuant to INA § 236." *Quezada-Bucio v. Ridge*, 317 F. Supp. 2d 1221, 1224 (W.D. Wash. 2004).

As the removal period has not yet begun, petitioner's detention is governed by INA § 236. Section 236(c)(1) directs the Attorney General to take into custody any alien who:

> (A) <u>is inadmissable by reason of having committed any offense covered in section 1182(a)(2) of this title</u>,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence [sic] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissable under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released . . .

INA § 236(c), 8 U.S.C. § 1226(c) (emphasis added). In the present case, the Notice to Appear charged petitioner with inadmissibility under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I), because he committed a crime involving moral turpitude. Thus, petitioner is

REPORT AND RECOMMENDATION
PAGE -7

detained pursuant to INA § 236(c)(1)(A) because his conviction under California Penal Code § 487(A) constituted a crime of moral turpitude.

B.  Petitioner is Not Indefinitely Detained.

Petitioner argues that he is being held indefinitely in violation of *Zadvydas*, 533 U.S. at 678, and that he must be released because "there is no significant likelihood of removal in the reasonably foreseeable future." (Dkt. #6 at 5-6). Respondents argue that *Zadvydas* is not controlling because it pertains to aliens detained during the "removal period" pursuant to INA § 241, whereas petitioner is detained pursuant to INA § 236(c). (*Marks v. Clark*, Case No. C06-717-RSL, Dkt. #13 at 10).

The post-removal-order detention statute, INA § 241(a)(1), 8 U.S.C. § 1231(a)(1), provides for the mandatory detention of aliens awaiting removal from the United States for an initial period of three months. This three months may be followed by an additional three months discretionary detention during which detention remains presumptively valid. *Zadvydas*, 533 U.S. at 701. In *Zadvydas*, the Supreme Court explained that after this six-month period, the alien is eligible for conditional release upon demonstrating that there is "no significant likelihood of removal in the reasonably foreseeable future." *Id.* The petitioner has the burden of coming forward with "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the petitioner meets this burden, the government must produce sufficient evidence to rebut petitioner's showing. *Id.*

Petitioner's reliance on *Zadvydas* is misplaced because, as discussed above, the 90-day removal period has not yet commenced. Moreover, petitioner has not demonstrated that his removal is not significantly likely in the reasonably foreseeable future. Rather, the only thing

REPORT AND RECOMMENDATION
PAGE -8

preventing petitioner's removal is his Petition for Review and related stay of removal. Once the Ninth Circuit decides his appeal, ICE will remove or release petitioner. *See Bequir v. Clark*, Case No. 05-1587-RSM-JPD, Dkt. #23 at 3. Thus, contrary to the petitioner in *Zadvydas*, petitioner's detention is neither "indefinite" nor "potentially permanent." *Zadvydas*, 533 U.S. at 690-91. Accordingly, petitioner has failed to make a threshold showing of indefinite detention.

Petitioner also argues that his due process rights have been violated because he has not been given "any opportunity for any real or meaningful individualized determination of his risk of flight or danger to the community." (Dkt. #6 at 9).

It is undisputed that "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. Furthermore, an alien's freedom from imprisonment "lies at the heart of the liberty that Clause protects." *Id.* at 690. The Supreme Court has specifically recognized, however, that detention during removal proceedings is a constitutionally permissible part of that process. *Demore v. Kim*, 538 U.S. 510, 523, 123 S. Ct. 1708, 155 L. Ed. 2d 724 (2003) (holding that the mandatory detention of criminal aliens during removal proceedings under INA § 236(c) is constitutionally valid even where there has been no individualized determination as to the alien's risk of flight and dangerousness to the community). Furthermore, petitioner was given an individualized bond hearing before an IJ on February 1, 2007, pursuant to 8 C.F.R. § 1003.19. (*Marks v. Clark*, Case No. C06-717-RSL, Dkt. #22 at 3). The IJ considered the evidence and petitioner's arguments, but determined that petitioner should remain detained because he poses a significant flight risk. (*Marks v. Clark*, Case No. C06-717-RSL, Dkt. #21 at 4). Thus, petitioner's detention meets due process requirements.

REPORT AND RECOMMENDATION
PAGE -9

C.     Motion for Permanent Injunction.

Respondents argue that petitioner should be enjoined from filing future frivolous and repetitive lawsuits raising citizenship and detention claims in this court. (Dkt. #10 at 2, *Marks v. Clark*, Case No. C06-717-RSL, Dkts. #13 and #21). Respondents note that petitioner has filed thirteen separate causes of action in the Western District of Washington, including four habeas petitions, all of which challenge the lawfulness of his immigration removal proceedings and detention, and many of which contain verbatim repetitions from previous filings. (*Marks v. Clark*, Case No. C06-717-RSL, Dkt. #21 at 5-6). Respondents contend that petitioner has demonstrated a clear pattern of vexatious litigation sufficient to warrant a permanent injunction.

The Court agrees that petitioner has a history of filing repetitive actions raising identical factual allegations and claims, even while others are still pending. Moreover, petitioner's repetitive filings have created confusion regarding the Court's resolution of these matters. *See Marks v. Clark*, Case No. C06-717-RSL, Dkt. #18, Motion for Clarification. However, the Court finds that any future attempts to relitigate old claims may be properly addressed through the doctrines of *collateral estoppel* and *res judicata*.[3] Accordingly, the Court recommends that

---

[3] "Collateral estoppel or issue preclusion forecloses 'the relitigation of issues of fact or law that are identical to issues which have been actually determined and necessarily decided in prior litigation in which the party against whom [issue preclusion] is asserted had a full and fair opportunity to litigate.'" *Ramsey v. U.S.I.N.S.*, 14 F.3d 206, 210 (4th Cir. 1994) (quoting *Virginia Hosp. Ass'n. v. Baliles*, 830 F.2d 1308, 1311 (4th Cir. 1987). "The doctrine of claim preclusion (res judicata) provides that a final judgment on the merits bars a subsequent action between the same parties or their privies over the same cause of action." *In re Imperial Corp. Of America*, 92 F.3d 1503, 1506 (9th Cir. 1996).

01 respondents' motion for permanent injunction be denied.[4]

## IV. CONCLUSION

For the foregoing reasons, I recommend that respondents' amended motion to dismiss be granted, and that this action be dismissed with prejudice. A proposed Order accompanies this Report and Recommendation.

DATED this 29th day of May, 2007.

_____
Mary Alice Theiler
United States Magistrate Judge

---

[4] The Court notes that petitioner filed a "Suggestion for Consolidation of These Two Matters," requesting that the Court consolidate the instant case with Case No. C06-717-RSL "because both petitions deal with the same subject matter and involve the same claims." *(Marks v. Clark*, Case No. C06-717-RSL, Dkt. #20). Respondents have indicated that they have no objection to consolidation of these two cases. Dkt. #10. However, to avoid any potential confusion that may result, the Court deems it appropriate to consider the cases separately.

REPORT AND RECOMMENDATION
PAGE -11